## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ATAX FRANCHISE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| PV TAX & CARGO SERVICES, INC. and | ) | |
| MARTI VROLIJK, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, ATAX FRANCHISE, INC. ("Atax") sues Defendants PV TAX & CARGO SERVICES, INC. and MARTI VROLIJK (collectively, "Defendants"), and states:

1.      This action arises out of Defendants' material breach of the Franchise Agreement between Atax and Defendants dated November 20, 2010 (the "Franchise Agreement") and Defendants' violation of the post termination obligations and restrictive covenants in the Franchise Agreement.  This action also involves Defendants' violation of the Lanham Act through their improper use of Atax's marks.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves federal questions.

3.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action for damages in excess of $75,000, exclusive of interest and costs, Atax is a citizen of the State of New York and Defendants are citizens of the State of Pennsylvania.

4.     Venue is proper in this Court pursuant to Paragraph 31.03 of the Franchise Agreement and the Guarantee of Atax Franchise, Inc. Franchise Agreement, providing that the venue of any action arising out of the Franchise Agreement or the Guarantee shall be Westchester County, New York.

<u>**GENERAL ALLEGATIONS**</u>

5.     Atax is a franchisor of tax preparation and accounting services businesses.

6.     There are approximately 35 Atax Businesses in the Unites States, offering and selling tax preparation and accounting services and related services to customers.

7.     Atax operates under the name and trademark "Atax," which is a federally registered trademark, and the name "Atax Accounting and Financial Services" (the "Marks").

8.     Atax has spent substantial sums of money, time and effort developing its system of franchises in its completive market place by establishing a distinctive and innovative system (the "System") for the operation of Atax businesses, which includes all trade secrets, business methods and strategies, confidential business information and all goodwill associated with the Marks.  Atax's efforts have benefited both customers and franchisees of Atax businesses alike.

9.     For more than five and a half years, from November 20, 2010 until approximately May 31, 2016, Defendants operated an Atax Business at 237 West Broad Street, Hazleton, PA 18201.  A true and correct copy of Defendants' Franchise Agreement is attached hereto as Exhibit A.

10.     As long-time franchisees and beneficiaries of Atax's System, Defendants had access to Atax's proprietary and confidential business information, including, but not limited to trade secrets, operations manuals, System standards, knowledge regarding the use of equipment and supplies, accounting techniques, product and service lists, customer lists, customer accounts

and relationships, sales methods, business methods and strategies, operations data, training materials, marketing strategies, staffing strategies, pricing information, types of products and services, selling prices, costs and profitability margins, and other information and requirements for the operation of an Atax Business (collectively, the "Confidential Information").

11.     This Confidential Information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means, the competitors of Atax, and such information is the subject of reasonable efforts to maintain its secrecy. Confidential Information was continually shared with Defendants throughout the life of their franchise, including in the confidential operations manual (the "Operations Manual"), which contained hundreds of pages of Atax's proprietary knowledge and business insights on operating a tax preparation and accounting services business within Atax's System.

12.     To protect this valuable knowledge and information from improper use or disclosure, among other provisions, Section 12.01 of the Franchise Agreement contained a confidentiality provision providing that Atax's Confidential Information must at all times be treated and maintained as confidential trade secrets of Atax. Defendants expressly agreed to accept and abide by the terms of this provision when they signed the Franchise Agreement.

13.     In order to preserve Atax's investments in its competitive market place, and to prevent competitors from obtaining an unfair advantage over Atax, Section 12.02 of the Franchise Agreement contained a non-compete agreement (the "Non-Compete Agreement"), which contained restrictions on Defendants' ability to compete with Atax. Section 8.4 of the Franchise Agreement provides in pertinent part:

12.02 **Covenant Not To Compete**. You agree that (i) at any geographic location whatsoever during the Initial Term and any Renewal Term of this Agreement, and

3

(ii) within your Territory (or within your Additional Office Territory, if any), within ten miles of the perimeter of your Territory (or within ten miles of the perimeter of your Additional Office Territory, if any) or within ten miles of the perimeter, or within, the Territory or market area (as applicable) of any other franchised or company-owned Atax Office (regardless of how established or operated) for a period two years immediately following the termination or expiration of this Agreement or any Renewal Agreement for any reason, you will not directly or indirectly engage in, aid, assist, serve or participate in any other business or activity (a "Competitive Business") which offers or sells any of the tax preparation items, products or services which now or· hereafter are authorized for sale under the Atax System or component thereof in any manner; which offers or sells similar or related products or services; which engages in any of the activities which this Agreement contemplates that you will engage in; or, which offers or sells any tax preparation service or component which now or in the future is part of the Atax System, or any confusingly similar product or service.

14.     Defendant Marti Vrolijk also personally executed a Confidentiality/Non-Competition Agreement on November 20, 2010 (Ex. H to Franchise Agreement), which provides:

> For a period of one year immediately following the expiration or termination of my employment/service/association/ownership participation, I am prohibited from engaging in any competitive business, if the other business is located within Franchisee's Territory, within ten miles of the boundaries of Franchisee's Territory, or within ten miles of (or within) any other Business Territory (whether Company-owned, franchised or otherwise established and operated).

15.     The Confidentiality/Non-Competition Agreement also includes an independent confidentiality provision providing that Atax's Confidential Information must at all times be treated and maintained as confidential trade secrets of Atax.

16.     Defendant Marti Vrolijk also personally executed a Guarantee of Atax Franchise, Inc. Franchise Agreement on November 20, 2010 (Ex. H to Franchise Agreement), which provides:

> The undersigned, individually and jointly, hereby agree to be personally bound by each and every covenant. term, condition, agreement and undertaking contained and set forth in said Franchise Agreement and any other agreement(s) by and between Franchisee and Franchisor, and agree that this Guarantee shall be construed as though the undersigned and each of them executed agreement(s)

4

containing the identical terms and conditions of the Franchise Agreement and any
other agreement(s) by and between Franchisee and Franchisor.

*       *       *

     Should Franchisee be in breach or default under the Franchise Agreement
or any other agreement(s) by and between Franchisee and Franchisor, Franchisor
may proceed directly against any or each of' the undersigned without first
proceeding against Franchisee and without proceeding against or naming in such
suit any other Franchisee, signatory to the Franchise Agreement or any others of
the undersigned.

17.     On May 10, 2016, Defendants sent Atax a purported "Resignation Letter"
requesting "the resignation of my franchise," and demanding an answer by May 31, 2016,
otherwise "[w]e'll consider the contract between us nulled [sic]."

18.     On June 15, 2016, Atax responded to Defendants' "Resignation Letter" and
advised that Defendants had no right to unilaterally "resign or terminate" the franchise and that
Defendants' attempt to "resign" constitutes an "abandonment" of Defendants' franchise, which
gives Atax the right to immediately terminate the Franchise Agreement pursuant to Paragraph
17.02(1).

19.     Although it was not obligated to do so, Atax gave Defendants fifteen days to
rescind the Resignation Letter.  Atax also reminded Defendants that, if the Agreement is
terminated, they will be subject to all post-termination obligations under Paragraph 18 of the
Franchise Agreement.

20.     Defendants did not rescind the Resignation Letter, and the Franchise Agreement
was terminated as of June 30, 2016.

21.     Upon termination of the Franchise Agreement, Defendants became subject to all
post-termination obligations under Paragraph 18 of the Franchise Agreement.

22.     Notwithstanding the restrictive covenants in the Franchise Agreement, Defendants continue to operate a store offering the same or similar services offered by their former Atax Business at the same location where Defendants previously operated their Atax Business.

23.     In addition, in the operation of their competitive business, Defendants are displaying Atax's marks and using names, phrases and identifiers -- such as "Atax" and "Atax Accounting and Financial Services" – that are the same as or confusingly similar to Atax's name and registered Marks.   Attached hereto as Exhibit B are pictures taken of Defendants' competitive business.

## COUNT I
### (Breach of Contract)

24.     Atax re-avers all prior Paragraphs as if fully set forth herein.

25.     Paragraph 17.02(1) of the Franchise Agreement states that it is a material breach of the agreement if Defendants "abandon the franchise relationship established under this Agreement; or, fail to operate your Atax Office(s) for three consecutive days during which you are required to operate same under this Agreement, unless your failure to operate is due to fire, flood, other acts of God or other similar causes beyond your control."

26.     Defendants materially breached the Franchise Agreement by abandoning their Atax business and by failing to operate their Atax business for more than three consecutive dates.

27.     Defendants also materially breached the Franchise Agreement by continuing to operate an office offering the same services offered by their former Atax business at the same location where they previously operated their Atax business, in violation of Section 8.4 of the Franchise Agreement and the Confidentiality/Non-Competition Agreement.

28.     By using names, phrases and/or other identifiers that are confusingly similar to Atax's Marks or other restricted names -- including "Atax" and "Atax Accounting and Financial Services"  -- Defendants are in breach of the post-term restriction in Section 12.02 and Section 18 of the Franchise Agreement.

29.     In addition, Defendants have failed to comply with their Post-Termination Obligations under Section 18 of the Franchise Agreement, including the immediate payment of "all royalties, fees and other sums" due to Atax under the Franchise Agreement, the discontinuance of use of all Marks, and the return of the Operations Manual and all training and other manuals.

30.     Defendants' breaches and wrongful acts have caused damage to Atax.  Atax anticipates that the damage will continue to accrue as Defendants continue to operate a competitive business in the same location as their previous Atax Business in violation of the restrictive covenants contained in the Franchise Agreement and in breach of the Post-Termination Obligations under Section 18 of the Franchise Agreement.

## COUNT II
### (Misappropriation of Trade Secrets)

31.     Atax re-avers all prior Paragraphs as if fully set forth herein.

32.     Atax is the exclusive owner of Confidential Information, including trade secrets and other proprietary information.

33.     Defendants received and became familiar with Atax's trade secrets and other proprietary information.

34.     Defendants received a copy of Atax's Operations Manual, which contains further trade secrets and proprietary information and, itself, constitutes a trade secret.

35.     Upon termination of the Franchise Agreement, Defendants were required to return their copy of Atax's Operations Manual to Atax and otherwise refrain from using Atax's trade secrets and proprietary information against Atax.

36.     Defendants failed to return Atax's Operations Manual and have used Atax's proprietary information and trade secrets in order to directly compete with Atax.

37.     Accordingly, Defendants have intentionally and wrongfully used, withheld and misappropriated Atax's trade secrets and proprietary information to compete with Atax. As a result, Atax has suffered and will continue to suffer damages and/or irreparable injuries.

### COUNT III
### (Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(a))

38.     Atax re-avers all prior Paragraphs as if fully set forth herein.

39.     Atax is in the business of providing goods and services under Atax's names and federally protected Marks.

40.     Defendants are operating a competitive business using the names, words, phrases and other identifiers – such as "Atax" -- that are the same as or confusingly similar to Atax's names and Marks.

41.     Defendants' use in commerce of Atax's names and Marks are likely to cause confusion or to deceive the public as to the origin, sponsorship or approval of the goods and services provided by Defendants.

42.     Defendants' failure to comply with the restrictive covenants in the Franchise Agreement is an open example of their desire to trade off the goodwill and public recognition of Atax.

43.     Defendants' actions are willful and intentional and constitute a false designation of origin and/or false or misleading description or representations of fact about Defendants' goods, services and commercial activities.

44.     As a direct and proximate result of such unfair competition, Atax has suffered and will continue to suffer damages and irreparable injury to its business, reputation and goodwill through the loss of control over and protection of Atax's customer base, names and Marks, on which Defendants have unfairly capitalized.

**COUNT IV**
**(Unfair Dilution Pursuant to 15 U.S.C. § 1125(c))**

45.     Atax re-avers all prior Paragraphs as if fully set forth herein.

46.     Atax is the owner of the Marks, which have gained distinctiveness among the public due to the use of the Marks in commerce due in large part to Atax's substantial investments over the years.

47.     Defendants' use of confusingly similar words and phrases in their competitive business impairs the distinctiveness of Atax's Marks and dilutes the investment that Atax has made to enhance its brand recognition.

48.     Defendants' have failed to respect Atax's efforts to protect its investments in its Marks, which benefit all franchisees, but instead have named their competitive business using words and phrases that Defendants have expressly agreed are confusingly similar to Atax's federally protected Marks.

49.     Defendants' actions are willful, intentional and in bad faith and constitute a false designation of origin and/or false or misleading description or representations of fact about Defendants' goods, services and commercial activities.

50.     Accordingly, Defendants' wrongful conduct has resulted in dilution by blurring of Atax's Marks, pursuant to 15 U.S.C. § 1125(c).

51.     Atax has suffered and will continue to suffer damages as a result of Defendants' actions.

### COUNT V
### (Unfair Competition)

52.     Atax re-avers all prior Paragraphs as if fully set forth herein.

53.     By virtue of having used and continuing to use its trademarks, Atax has acquired common law rights in those marks.

54.     The Defendants' use of marks identical or confusingly similar to Atax's trademarks infringes Atax's common law rights in its trademarks, and this use is likely to cause confusion, mistake, or deception among consumers, who will believe that the Defendant's goods, services, and/or products originate from, are affiliated with, or are endorsed by Atax when, in fact, they are not.

55.     As a direct and proximate result of the Defendants' infringement of Atax's common law trademark rights under New York and other common law, Atax has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

### REQUEST FOR RELIEF

WHEREFORE, ATAX FRANCHISE, INC. respectfully requests that the Court grant it the following relief:

(a)     Issuing a permanent injunction:

      (i)     enjoining and prohibiting Defendants from competing with Atax in violation of the Franchise Agreement for a period of two years from the termination of the Franchise Agreement;

      (ii)    enjoining and prohibiting Defendants from soliciting or doing business in any way with Atax's customers and suppliers in violation of the Franchise Agreement; and

      (iii)   enjoining any further or additional breaches of the Franchise Agreement;

(b)     Entering judgment in its favor for the damages caused by Defendants' wrongful conduct and breaches of the Franchise Agreement;

(c)     Granting specific performance of the Defendants' obligations under Section 18 of the Franchise Agreement;

(d)     Granting an award for interest, costs and attorney's fees pursuant to the Franchise Agreement; and

(e)     Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: *s/ Aaron Van Nostrand*
    Aaron Van Nostrand
    David Oppenheim
    500 Campus Drive, Suite 400
    Florham Park, NJ 07932
    (973) 360-7900
    Attorneys for Plaintiff
    Atax Franchise, Inc.

Dated:  December 20, 2016